UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CEDRIC WRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICIA RUZE, M.D.; BERHAN YEH, M.D.; JOHN DOE, *URC Committee Member FMC Devens*; JANE DOE, *URC Committee Member FMC Devens*;<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 1:20-cv-10369-ADB |

**MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

    Plaintiff Cedric Wright ("Mr. Wright"), who at all relevant times was an inmate at Devens Federal Medical Center ("FMC Devens"), filed a <u>Bivens</u> action for damages and injunctive relief against Dr. Patricia Ruze and Dr. Berhan Yeh (collectively, "Defendants"), alleging that they demonstrated deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. [ECF No. 1 ("Compl.")]. Defendants have now moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF No. 38]. For the reasons set forth below, Defendants' motion to dismiss is <u>GRANTED</u> in part and <u>DENIED</u> in part.

**I.    BACKGROUND**

    **A.    Factual Background**

    The complaint alleges the following facts regarding Mr. Wright's medical care at FMC Devens, which the Court accepts as true for purposes of the Defendants' motions to dismiss. <u>See</u>

Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  When deciding a motion to dismiss, courts may also consider "a limited array of additional documents such as any that are attached to the complaint," Giragosian v. Bettencourt, 614 F.3d 25, 27–28 (1st Cir. 2010); therefore, the Court also considers the exhibits and memorandum of law that Mr. Wright submitted in support of his complaint, see [ECF Nos. 4, 7].

Since 2016, Mr. Wright has complained of and been treated for pain in his right shoulder. [Compl. ¶ 8].  An MRI of his right shoulder on June 15, 2016 revealed a "small partial thickness tear involving the supraspinatus tendon with a small amount of signal abnormality noted at greater tuberosity insertion site," which is also known to as a "torn rotator cuff."  [ECF No. 7 at 2; Compl. ¶ 9].  On December 19, 2017, a second MRI of Mr. Wright's right shoulder showed that "[t]he tendon of the supraspinatus muscle is unremarkable" and "no convincing rotator cuff tear."  [Compl. ¶ 10; ECF No. 7 at 4].

In July 2018, Mr. Wright met with an orthopedic specialist, Dr. William Hardy, who was assigned to FMC Devens.  [Compl. ¶ 11].  Dr. Hardy ordered an orthopedic surgical consult. [ECF No. 7 at 7; Compl. ¶ 11].  He noted that Mr. Wright suffered from myasthenia gravis and was "currently post op left shoulder rotator cuff arthroscopic repair performed 4/2018." [ECF No. 7 at 7].  Dr. Hardy found that Mr. Wright "has pain and decreased ROM in right shoulder as well" and that the "[e]xam [is] consistent with Sub-Acromial Impingement Syndrome."  [Id.; Compl. ¶11].  Dr. Hardy also stated that he would send a CD containing MRI images of the right and left shoulder to the orthopedic surgeon.  [Compl. ¶ 11; ECF No. 7 at 7].

On November 5, 2018, Mr. Wright met with orthopedic surgeon Dr. Michael Brown to discuss a course of treatment for his right shoulder pain.  [Compl. ¶ 12].  Dr. Brown diagnosed Mr. Wright with "[r]ight shoulder impingement with possible rotator cuff tear and AC joint

arthrosis" and "chronic right distal biceps tendon rupture." [Compl. ¶ 12; ECF No. 7 at 11]. He wrote that the imaging disc Mr. Wright brought with him contained only an MRI of the left shoulder. [Id.]. Dr. Brown discussed both operative and non-operative treatment options for Mr. Wright's right shoulder. [Id.]. Mr. Wright stated that he "would like to proceed with surgical intervention for his right shoulder," and Dr. Brown noted that "[h]e [would] obtain an MRI scan preoperatively." [Id.].

Mr. Wright says that, on November 15, 2018, he met with unnamed "Medical Personnel" to "discuss the nature and extent of his [r]ight [s]houlder injury." [Comp. ¶ 13]. Mr. Wright further alleges that he "indicated he wished to proceed with the shoulder surgery to alleviate the constant pain" and that "[s]hortly thereafter a request for authorization of surgery" was submitted to the Utilization Review Committee ("URC"). [Id.]. In January 2019, the URC, which was chaired by Dr. Yeh, denied his requests for surgery on his right shoulder and for another MRI. [Compl. ¶¶ 5, 14]. An Administrative Remedy response from the FMC Devens Warden stated that "[i]t was determined that [Mr. Wright] did not meet the criteria for another MRI at this time . . . ." and that "[t]he consultation for shoulder surgery is not medically indicated, and disapproved as well." [ECF No. 7 at 28; Compl. ¶ 14].

On April 4, 2019, Dr. Ruze assessed Mr. Wright for the first time. [ECF No. 7 at 13, 15; Compl. ¶ 15]. At the appointment, Mr. Wright complained of severe right shoulder pain and requested a recommendation for surgery. [Compl. ¶ 15]. Dr. Ruze's notes from the appointment state that she had spoken with the team previously managing Mr. Wright and reviewed his records, "including extensive PT notes." [ECF No. 7 at 13]. Her notes explain

> [g]iven Mr. Wright's myasthenia gravis, history of weakness and outcomes of prior surgeries he is not considered a good candidate for additional shoulder surgery on [the] right side. Indeed the right side is currently stronger and with better ROM than

3

> [the] left side which has had two separate surgeries. I would not proceed with any invasive strategies to further manage the right shoulder pain or decreased ROM.

[Id.]. Dr. Ruze also noted Mr. Wright's reports of "significant pains" and recommended that he see the on-site orthopedist for evaluation. [Id. at 22]. She ordered Mr. Wright to attend physical therapy but did not order an MRI or other diagnostic tests for his right shoulder. [Compl. ¶ 15].

Dr. Ruze also discontinued Mr. Wright's opiate pain medication, [Compl. ¶ 15], writing that "I do not think that long acting opiates are appropriate for these orthopedic issues and will begin [a] slow taper. Patient [is] in agreement with this plan." [ECF No. 17 at 22]. Although her notes indicate that Dr. Ruze continued Mr. Wright's prescriptions for acetaminophen and lidocaine, [id. at 18], Mr. Wright alleges that Dr. Ruze did not prescribe any other pain medication after discontinuing his opiate pain medication and instead instructed Mr. Wright to buy ibuprofen from the commissary, [ECF No. 4 at 6]. Throughout 2019, Mr. Wright submitted "Inmate Request to Staff" forms that asked Dr. Ruze to treat his right shoulder and prescribe him opiate pain medication, but those requests went unanswered. [Compl. ¶ 16; ECF No. 7 at 24–26].

    **B.**    **Procedural History**

On February 21, 2020, Mr. Wright filed his complaint alleging that Dr. Yeh and Dr. Ruze, in their official and individual capacities, violated his Eighth Amendment rights, and seeking injunctive relief, compensatory damages, and punitive damages. [Compl.]. After its initial screen and review of the complaint, the Court dismissed Mr. Wright's individual capacity claims for injunctive relief and the official capacity claims for monetary damages but allowed his

4

claims to otherwise proceed. [ECF No. 10 ¶ 3]. On August 2, 2021, Defendants filed a motion to dismiss, [ECF No. 38], which Mr. Wright opposed on November 8, 2021.[1] [ECF No. 45].

## I.  DR. YEH'S ABSOLUTE IMMUNITY

Dr. Yeh moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) because he "is a commissioned officer of the U.S. Public Health Service ("PHS"), assigned to a duty station at FMC Devens at all times relevant to this action," and under 42 U.S.C.§ 233(a), he is absolutely immune from any constitutional suit arising from conduct within the scope of his employment. [ECF No. 39 at 1, 9]. Mr. Wright does not respond to this argument. See [ECF No. 45].

> Section 233(a) states
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, for  damages for personal injury resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office of employment, shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the officer or employee whose act or omission gave rise of the claim.

42 U.S.C.§ 233(a). In Hui v. Castenada, the Supreme Court held that "[s]ection 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." 559 U.S. 799, 806 (2010); Camerano v. United States, 196 F. Supp. 3d 172, 180 (D. Mass. 2016) (citing to Hui and finding that the court lacked jurisdiction over PHS employees who are immune from suit), aff'd, 855 F.3d 15 (1st Cir. 2017). The Court noted that although "that immunity is contingent upon the alleged misconduct having occurred in the

---

[1] Although Mr. Wright did not file a timely opposition, the Court will nonetheless address the motion to dismiss on its merits as if it had been properly opposed.

course of the PHS defendant's duties," "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period." Hui, 559 U.S. at 811.

In support of the motion to dismiss, Dr. Yeh submitted a declaration in which he represents that he is a commissioned officer of the PHS and that he worked in that position at all times relevant to this litigation.[2] [ECF No. 39-1]. The unlawful conduct Mr. Wright attributes to Dr. Yeh all relates to the provision of medical treatment and the URC's recommendation regarding Mr. Wright's shoulder surgery. [Compl. ¶¶ 14, 18, 21]. Therefore, Dr. Yeh's declaration, as well as the nature of the allegations set forth in the complaint, establish that he was acting within the scope of his employment as a PHS officer when he engaged in the complained of conduct. Accordingly, Dr. Yeh is absolutely immune from this constitutional suit, and all claims against him are DISMISSED.

## II.     DR. RUZE'S 12(B)(6) MOTION

### A.     Legal Standard

Under the Federal Rules of Civil Procedure, a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading

---

[2] Dr. Yeh's claim of absolute immunity under § 233(a) implicates this Court's jurisdiction to hear a case against him. E.g., Uptergrove v. United States, 2008 WL 2413182 at *5 (E.D. Cal. June 12, 2008) ("[W]here an official is entitled to absolute immunity, that immunity bars the court's jurisdiction as to claims against that official so that dismissal is warranted pursuant to Rule 12(b)(1)."). Accordingly, the Court may consider the affidavit Dr. Yeh filed in support of his motion to dismiss without converting the motion into one for summary judgment. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002) ("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion. . . .").

standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (quoting García–Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted).  "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García–Catalán, 734 F.3d at 103 (internal quotations and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

In this case, the Court construes the complaint liberally because it was filed *pro se*.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  "However, pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim.  Muller v. Bedford VA Admin. Hosp., 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

B.      Discussion

Dr. Ruze asserts that Mr. Wright has failed to state a claim because he has not alleged that she was deliberately indifferent to his health or safety, and that she is thus entitled to qualified immunity. [ECF No. 39 at 5–9].

Qualified immunity protects "government officials performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a defendant is entitled to qualified immunity, a court must determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

At the first step of this analysis, the Court must ascertain whether Mr. Wright has alleged facts sufficient to establish a violation of his Eighth Amendment rights. The Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994) set forth a two-part test for Eighth Amendment violations. "First, the deprivation alleged must be, objectively, sufficiently serious." Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 834). Second, there must be a showing "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Id. (citing Farmer, 511 U.S. at 837). Where an issue of deliberate indifference is presented, liability will not lie "unless the official knows of and disregards an excessive risk to inmate health and safety." Farmer, 511 U.S. at 837. "A finding of deliberate indifference requires more than a showing of negligence." Id. at 835; see Burrell, 307 F.3d at 8 (deliberate indifference standard requires state of mind

"more blameworthy than negligence"). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Thus, substandard treatment, "even to the point of malpractice, is not the issue" under the deliberate indifference standard. Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006). "[A] plaintiff's 'allegations [that] simply reflect a disagreement on the appropriate course of treatment. . . fall[] short of alleging a constitutional violation.'" Id. (quoting Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980)). But "deliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" Id. at 163 (quoting Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)).

Here, Mr. Wright alleges that Dr. Ruze exhibited deliberate indifference by (1) failing to perform a preoperative MRI on his right shoulder; (2) failing to properly diagnose and treat his shoulder injury; and (3) discontinuing his pain medication without a proper substitute and ignoring his subsequent request for treatment. [Compl. ¶¶ 15–16, 19–20, 22].

To the extent Mr. Wright asserts that Dr. Ruze violated the Eighth Amendment because she failed to recommend him for shoulder surgery or to order a third preoperative MRI of his right shoulder, he has failed to state a claim. Mr. Wright's allegations regarding his surgery requests only demonstrate a difference in the choice of a course of treatment and, even construing the allegations in his favor, cannot be said to be "'so clearly inadequate as to amount to a refusal to provide essential care.'" Feeney, 464 F.3d at 163 (quoting Torraco, 923 F.2d at 234)). Mr. Wright points to the notes written by Dr. Hardy and Dr. Brown as evidence that surgery was necessary to treat his condition. The notes, however, do not show that Dr. Hardy and Dr. Brown considered Mr. Wright to be at excessive risk if he did not receive surgery. On

9

the contrary, the notes reveal that Dr. Hardy and Dr. Brown considered various options to treat Mr. Wright's pain, which included but were not limited to surgery. According to Dr. Ruze's notes, she spoke with Mr. Wright's previous medical team and reviewed the 2017 MRI noting "no convincing rotator cuff tear." Based on this information, and given Mr. Wright's "history of weakness and outcomes of prior surgeries," Dr. Ruze decided that invasive surgery was not indicated. Although Mr. Wright may disagree with Dr. Ruze's decision not to pursue a surgical treatment, he has not adequately alleged that Dr. Ruze was deliberately indifferent to his health and safety for failing to do so. Likewise, given that Mr. Wright had already received two MRIs of his right shoulder, Dr. Ruze's decision to not order a third be performed does not support the inference that she was deliberately indifferent to his medical needs but at most alleges a difference in the choice of a course of treatment, which is insufficient to state an Eighth Amendment violation. See Feeney, 464 F.3d at 162.[3]

Setting aside the issue of recommending surgery and ordering an MRI, construing all of the remaining factual allegations in his favor, Mr. Wright has just barely alleged an Eighth Amendment violation. Dr. Ruze does not dispute that Mr. Wright has pleaded an objectively serious medical need and only argues that he has failed to allege that she knew of and disregarded an excessive risk to his health and safety. [ECF No. 39 at 8–9]. In her view, this entire case is simply one of differing opinions about a course of treatment because the evidence shows that Mr. Wright "was provided with treatment for his medical conditions, including multiple consultations with health care providers, a comprehensive assessment of his shoulder

---

[3] For this reason, even if Dr. Yeh were not absolutely immune to suit, dismissal would still be proper under Rule 12(b)(6) because the URC's decision to not approve surgery for Mr. Wright or order a preoperative MRI likewise only amounts to a difference in opinion as to the course of treatment, not evidence of an excessive risk to Mr. Wright's health and safety.

condition, and an evidence-based decision to not provide another MRI or a right shoulder surgery, or further opiates for long-term orthopedic pain." [Id. at 8]. Dr. Ruze ignores, however, that Mr. Wright alleges that Dr. Ruze's prescribed course of action, which included physical therapy and stretching exercises, "resulted in further injury to [his] [r]ight [s]houlder" and that "no medical professional would ever order stretching exercises to a pre-operative patient with a torn rotator cuff." [Compl. ¶ 20; see also ECF No. 7 at 25 (June 2019 complaint stating that Mr. Wright thought that the stretching treatment "caused [him] more injury and pain")]. Liberally construed, the allegations go beyond demonstrating that Mr. Wright disagreed with Dr. Ruze's course of treatment and instead allow for the plausible inference that "the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" Feeney, 464 F.3d at 163 (quoting Torraco, 923 F.2d at 234 (internal citation omitted)). Additionally, Mr. Wright has also claimed that Dr. Ruze discontinued his opiate pain medication, directed him to purchase ibuprofen from the commissary, and ignored his requests when he complained of the pain he was experiencing and asked to be put back on the opiate medication. [ECF No. 4 at 7; Compl. ¶¶ 16, 19]. Again, liberally construing the allegations in his favor, Mr. Wright is not just alleging that he disagreed with the course of treatment but is claiming that he was denied an effective pain medication and left with hardly any treatment at all. These facts are sufficient at this early stage to plead deliberate indifference. See Stone v. Worcester Cty. Sheriff's Off., No. 18-cv-10011, 2019 WL 1367768, at *4 (Mar. 26, 2019) ("[U]se of a 'less efficacious' pharmaceutical method of treatment may rise to the level of deliberate indifference where the treatment is failing[,] and a defendant is aware that an alternative pharmaceutical drug is a successful remedy."). Accordingly, at this stage, the facts alleged by Mr. Wright go just far enough to support the

11

plausible inference that Dr. Ruze violated a constitutional right.  See Maldonado, 568 F.3d at 269.

Although Dr. Ruze argues that she is entitled to qualified immunity, her briefing focuses only on whether Mr. Wright has pled a constitutional violation, and she has not argued that the second prong of the analysis is satisfied here.  Based on the record before it, the Court cannot find that Mr. Wright's Eighth Amendment claim is so novel that his rights were not "clearly established" or that a reasonable person would not have been aware of said rights.  Accordingly, Dr. Ruze is not entitled to qualified immunity at this time, and her motion to dismiss is DENIED.

## III.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 38],  is GRANTED  in part and DENIED in part.  All claims against Defendant Dr. Yeh are dismissed.  With the exception of claims based on any decision to not recommend him for surgery or another MRI on his right shoulder, Mr. Wright's claims against Defendant Dr. Ruze are allowed to proceed.

**SO ORDERED.**

February 10, 2022                                              /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE